**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

TYLER NEWTON,

Plaintiff,

v.

MOEZ LIMAYEM, President of the University of South Florida, in his official capacity; MATT MARSHALL, Director of the University of South Florida Marshall Student Center, in his official capacity; CHRIS DANIEL, Chief of the University of South Florida Police Department, in his official capacity; MICHAEL E. GRIFFIN, Chair of the University of South Florida Board of Trustees, in his official capacity; OSCAR HORTON**,** Vice Chair of the University of South Florida Board of Trustees, in his official capacity; CHARBEL J. BARAKAT, Member of the University of South Florida Board of Trustees, in his official capacity; MICHAEL CARRERE, Member of the University of South Florida Board of Trustees, in his official capacity; N. ROGAN DONELLY, Member of the University of South Florida Board of Trustees, in his official capacity; ANDREA GONZMART WILLIAMS, Member of the University of South

**Case No. ________________**

**VERIFIED COMPLAINT**
**PERMANENT INJUNCTIVE RELIEF REQUESTED**
**DECLARATORY RELIEF REQUESTED**

Florida Board of Trustees, in her official capacity; CHAD MIZELLE, Member of the University of South Florida Board of Trustees, in his official capacity; LAURAN MONBARREN, Member of the University of South Florida Board of Trustees, in her official capacity; FREDRICK PICCOLO, Member of the University of South Florida Board of Trustees, in his official capacity; HUNTER RABINOWITZ, Member of the University of South Florida Board of Trustees, in his official capacity; DAVID SIMMONS, Member of the University of South Florida Board of Trustees, in his official capacity; NANCY H. WATKINS, Member of the University of South Florida Board of Trustees, in her official capacity; and WILLIAM WEATHERFORD, Member of the University of South Florida Board of Trustees, in his official capacity,

Defendants.

---

## INTRODUCTION

1. Mr. Newton stood in an outdoor public plaza at an event on the University of South Florida campus that was free and open to the public. He held a constitutionally protected sign and engaged in constitutionally protected discourse with passersby who were willing to speak with him. For that, USF, through its administrators and police, arrested him, put him in handcuffs, cited him for the crime of trespass, threw him in jail, and banned him from setting foot on campus for a year. In doing so, USF violated—and continues to violate—Mr. Newton's rights under the First and Fourteenth Amendments to the United States Constitution.

2. Mr. Newton is an abortion abolitionist who believes in the sanctity of human life as a matter of religious and moral conviction. As a disabled veteran, Mr. Newton has committed himself to public advocacy and speech.

3. Mr. Newton stands in public places, holds a sign bearing his convictions, and speaks with passersby. He blocks no one, threatens no one, sells nothing, and does not use a voice amplifier. He asks only to be left alone to hold his signs and to speak with those who are willing to talk with him.

4. In 2018, the Florida legislature enacted the Campus Free Expression Act. Under the Act, outdoor areas of public universities that are generally open to members of the campus community are considered traditional public forums for everyone.

5. Even though USF is a public university, it is not honoring its obligations under the Act. When Mr. Newton attended the USF Bull Market—an event held on the MSC Plaza, an area that is generally open to the campus community—Matt Marshall, the Director of Marshall Student Center, demanded that Mr. Newton leave. According to Mr. Marshall, Mr. Newton had to leave because the Market organizers did not want him to speak.

6. Mr. Newton declined to leave, explaining that he was engaging in constitutionally protected activity in a traditional public forum. In response, Mr. Marshall called the USF police. USF police arrested Mr. Newton, put him in handcuffs, cited him for the crime of trespass, took him to the local jail, and issued a No Trespass Order, banning Mr. Newton from the USF campus for a year.

7. Under the First and Fourteenth Amendments to the United States Constitution and the Campus Free Expression Act, an individual has the right to stand peacefully in outdoor areas of a public university campus and speak his conscience. The policies and regulations under which USF personnel acted against Mr. Newton are unlawful.

8. Those policies and regulations continue to present an ongoing and credible threat to Mr. Newton's rights. Mr. Newton brings this action to obtain injunctive and declaratory relief to allow him to continue engaging in constitutionally protected activity at the USF Bull Market.

**JURISDICTION AND VENUE**

9. This action arises under the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and 28 U.S.C. §§ 2201 and 2202.

10. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331.

11. Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, under 28 U.S.C. § 1391(b)(1)–(2). A substantial part of the events giving rise to Mr. Newton's claims have occurred, are occurring, and will occur in connection with the matters alleged herein, and Defendants are subject to suit in this Court on the claims pleaded.

**THE PARTIES**

12. Plaintiff TYLER NEWTON is a resident of Pinellas County, Florida. Mr. Newton is a disabled veteran who is medically retired from the United States Army. He is not a USF student.

13. Defendant MOEZ LIMAYEM is the President of USF. In the performance of his duties, Dr. Limayem is the chief administrative officer of USF; is responsible for the overall operation, management, and administration of USF; and has supervisory authority over all USF staff. Regulation USF4.0140 acknowledges the President's responsibility for campus operations and administration. *See* Regulation USF4.0140 § I. In addition, Regulation USF4.0140 provides that the President has designated University Law

Enforcement to provide for campus security and empowered them, among others, to request individuals to leave or vacate campus—the failure to abide by which may serve as the basis for a No Trespass Order—and to issue No Trespass Orders. *Id.* Dr. Limayem is sued in his official capacity only.

14. Defendant MATT MARSHALL is the Director of the Marshall Student Center. In the performance of his duties, Mr. Marshall has authority over the grounds behind the Marshall Student Center, which is called the MSC Plaza. Regulation USF4.0140 acknowledges Mr. Marshall's authority as a University Official to request individuals to leave or to vacate campus, the failure to comply with such a request may serve as the basis for a No Trespass Order. *See* Regulation USF4.0140 §§ I–IV. Mr. Marshall is sued in his official capacity only.

15. Defendant CHRIS DANIEL is the Chief of the USF Police Department. In the performance of his duties, Mr. Daniel oversees the operation of the USF Police Department, whose goal is to provide for the safety and security of USF; is empowered to make arrests and enter No Trespass Orders; and has supervisory authority over all USF Police Officers. His supervisory responsibilities include directing University Police officers' enforcement of Regulation USF4.0140 and No Trespass Orders issued under that regulation, including the No Trespass Order that was issued against Mr. Newton. *See* Regulation USF4.0140 §§ I–IV. Mr. Daniel is sued in his official

capacity only.

16. Defendant MICHAEL E. GRIFFIN is the Chair of the Board of Trustees. He is sued in his official capacity only.

17. Defendant OSCAR HORTON is the Vice Chair of the Board of Trustees. He is sued in his official capacity only.

18. Defendant CHARBEL J. BARAKAT is a Member of the Board of Trustees. He is sued in his official capacity only.

19. Defendant MICHAEL CARRERE is a Member of the Board of Trustees. He is sued in his official capacity only.

20. Defendant N. ROGAN DONELLY is a Member of the Board of Trustees. He is sued in his official capacity only.

21. Defendant ANDREA GONZMART WILLIAMS is a Member of the Board of Trustees. She is sued in her official capacity only.

22. Defendant CHAD MIZELLE is a Member of the Board of Trustees. He is sued in his official capacity only.

23. Defendant LAURAN MONBARREN is a Member of the Board of Trustees. She is sued in her official capacity only.

24. Defendant FREDRICK PICCOLO is a Member of the Board of Trustees. He is sued in his official capacity only.

25. Defendant HUNTER RABINOWITZ is a Member of the Board of Trustees. He is sued in his official capacity only.

26. Defendant DAVID SIMMONS is a Member of the Board of Trustees. He is sued in his official capacity only.

27. Defendant NANCY H. WATKINS is a Member of the Board of Trustees. She is sued in her official capacity only.

28. Defendant WILLIAM WEATHERFORD is a Member of the Board of Trustees. He is sued in his official capacity only.

29. The Defendant Trustees, acting collectively in their official capacities, administer USF pursuant to Article IX, section 7(b)–(c) of the Florida Constitution and Florida Statutes § 1001.71(1). Their responsibilities include campus safety and security measures affecting campus visitors and the use, protection, and control of University buildings and grounds. Fla. Bd. of Governors Reg. 1.001(3)(l), (7)(g). Florida law further recognizes the Defendant Trustees' authority concerning restrictions on activities and access to University facilities and the prioritization of University space. Fla. Stat. § 1001.706(7)(b).

30. The Defendant Trustees retain responsibility for establishing University policy and assessing the implementation of Board policies. The University President is accountable to the Board of Trustees for University operations and administration. *See* USF Board of Trustees Operating Procedures art. I.C.3(a)–(b), I.D. These responsibilities concern the University's ongoing administration of the campus-access and expressive-

activity restrictions challenged in this action.

31. The Defendant Trustees, acting collectively, possess authority to approve substantive amendments to University regulations and to repeal those regulations, including Regulation USF4.0140, under which Mr. Newton remains excluded from campus. *See* USF Policy 0-001 §§ IV.A.6.a, IV.C.1.a(2)–(3). Mr. Newton seeks prospective declaratory and injunctive relief against the Defendant Trustees in their official capacities concerning the ongoing administration and enforcement of Regulation USF4.0140 and Policy 6-028 insofar as those restrictions violate his federal constitutional rights.

## FACTUAL ALLEGATIONS

### Mr. Newton's Protected First Amendment Activity

32. Mr. Newton is a Christian. He holds the religious belief that he is called to publicly proclaim his faith in Jesus Christ and to advocate for the protection of preborn human life.

33. Mr. Newton is an abortion abolitionist. Abolitionism, as Mr. Newton understands and practices it, holds as a matter of religious conviction that human life begins at conception and that the preborn are entitled to the same legal protection as any other person. Abolitionists are distinct from the mainstream pro-life movement in that they call for the immediate and complete end of abortion. Mr. Newton's advocacy reflects this conviction.

34. Mr. Newton's expressive activity and religious exercise include

displaying signs bearing religious and abolitionist messages and speaking with members of the public in public places regarding his religious and abolitionist views.

35. Mr. Newton conducts this activity through personal advocacy on college campuses and elsewhere.

36. Mr. Newton believes that many college students are not routinely exposed to his views on abortion, and that through mutual, respectful dialogue, he can help them to consider his views.

37. The messages Mr. Newton communicates by his signs and through his speech are protected by the First Amendment to the United States Constitution.

38. Mr. Newton engages in his expressive activity peacefully, without interfering with the rights of others or impairing the function of the school.

39. Mr. Newton generally chooses to express his message by standing in a fixed location while holding or displaying a sign and speaking with members of the public who are willing to engage in discussion. Mr. Newton does not use an amplification device, does not shout, maintains an even tone of voice, and engages respectfully with members of the public.

40. Mr. Newton does not follow, harass, or obstruct anyone, including, but not limited to, persons who do not wish to speak with him, nor does he use threatening or abusive language or engage in disorderly, obstructive, or

unlawful conduct.

41. Mr. Newton's purpose in engaging in his expressive activity is to communicate his religious and moral convictions to members of the public and to persuade others peacefully.

42. Mr. Newton's purpose is not simply to display a sign where it might be seen from a distance. He wants to display his sign where it can be easily viewed and speak to as many people as possible.

43. Personal conversations are an important part of how Mr. Newton expresses and communicates his views. In personal conversations, he can listen to questions or concerns, explain his position in greater depth, and respond to what is being said.

44. Mr. Newton has had conversations with others that caused them to reconsider their views, agree to think more carefully about the issue, or continue discussions with him. That kind of interaction cannot be replicated by holding a sign or attempting to communicate from a location distant from where students congregate.

45. Mr. Newton also regularly records his expressive activity on a video camera to gather newsworthy footage that can be posted on social media.

46. While Mr. Newton posts videos of his interactions and expressive activity to social media, social media is not as effective in reaching his intended audience as in-person engagement.

**The MSC Plaza and the USF Bull Market**

47. USF was founded in 1956. Classes first began on its Tampa campus in 1960. Today, USF has nearly 50,000 students. It is a public university.

48. The Marshall Student Center (originally called the University Center) was built in 1959. In 2008, USF built a new building that replaced the old one, and MSC Plaza opened shortly thereafter.

49. MSC Plaza sits immediately behind (south of) the Marshall Student Center. It has long served as an outdoor gathering space for students and others. It has sidewalks, a grassy area, a tree-lined area with plants and benches, and the Bull Fountain, a popular focal point representing USF's mascot. MSC Plaza is generally open to the campus community, and it is not surrounded by a fence or any other physical barrier. Individuals can and often do freely walk, gather, and converse in the MSC Plaza. An aerial image of MSC Plaza is attached as <u>Exhibit A</u>.

50. MSC Plaza is also the home of the USF Bull Market (the "Market"), one of USF's largest and oldest traditions. The Market is a place for student groups, non-profits, and vendors to set up tents and promote their organizations, services, and wares to attendees in an open-air environment. It is a large and well-attended event.

51. There is no fee to enter the Market, nor is a fence or other barrier

erected around MSC Plaza while the Market is occurring. Members of the public may freely enter, walk through, gather, and remain at the Market.

52. The Market operates on a recurring basis. For the 2026–27 school year, the Market takes place from 9:00 a.m. to 2:00 p.m. most Wednesdays (outside of exams and breaks) from late September to April.

**Mr. Newton goes to the Market**

53. Due to its size, the Market presents a unique opportunity for Mr. Newton to engage with USF students in his First Amendment activity.

54. On September 23, 2026, at approximately 9:30 a.m., Mr. Newton arrived at the Market. Upon arrival, Mr. Newton met with two companions in MSC Plaza. After about thirty minutes, Mr. Newton and his companions separated, each standing about 20–30 feet away from one another. Mr. Newton stood alone in the tree-lined area of MSC Plaza, away from vendors and off to the side of the sidewalk. He did not block any sidewalks or take up any space allocated to vendors. An aerial image showing the location where Mr. Newton was standing is attached as Exhibit B.

55. Mr. Newton displayed a sign featuring a photograph of a human fetus and the words, "What about her body and her rights?" He also spoke with individuals passing by about his abolitionist views. He recorded himself with a camera on a tripod that was set up immediately next to him. He did not use amplification, did not yell, did not follow or harass anyone, and did not

otherwise disrupt anyone or any activity at the Market. Mr. Newton's video recording of the incident is attached as Exhibit C.[1]

56. Approximately twenty minutes after Mr. Newton began his First Amendment activity, Mr. Marshall approached Mr. Newton and informed him that the area where he was standing was "reserved" for the Market only, that the Market was a "limited public forum," and, accordingly, that he would have to move to a different location, outside of the boundaries of the Market. Video at 21:03–30. Mr. Marshall told Mr. Newton that he would be "trespassed" if he did not leave. *Id.* at 21:30–40.

57. Mr. Marshall later told Mr. Newton that the justification for his directive to leave MSC Plaza was that the Market organizers "said they do not want [your First Amendment] activity taking place during their event." *Id.* at 31:58–32:08. According to Mr. Marshall, the Market organizers "don't want [your First Amendment activity] happening within their reservation and they have that choice." *Id.* at 32:10–15.

58. In support of his statements to Mr. Newton, Mr. Marshall invoked USF Policy 6-028. *Id.* at 21:25–35.

59. USF Policy 6-028 provides, among other things, that "[a]ny areas . . . reserved as Reserved Activities . . . will be considered a USF location that is

[1] Plaintiff has contemporaneously moved for leave to submit the video in audiovisual format. For the Court's immediate convenience, the video is available at https://bit.ly/4ybbjIO.

not a Public Space during that reserved . . . time." Exhibit D § VII.A.5. USF Policy 6-028 defines "Reserved Activity" as "[a] use of space for a designated purpose. (This includes the designated use of space including events, tabling, programs, or use of space modifications.)" *Id.* § IV. USF Policy 6-028 defines "Public Space" as "[a]reas open to the general public and not used for academic or athletic purposes." *Id.*

60. Under USF Policy 6-028, USF thus reserves campus space for the sole use of a reserved event unless the event organizers determine that other First Amendment activities are allowed. USF Policy 6-028 contains no standards purporting to govern how the event organizers determine whether to allow other First Amendment activities. Instead, that decision is in the sole and unfettered discretion of the event organizers.

61. Because the organizers of the Market—an event involving the use of space for a designated purpose—decided not to allow Mr. Newton to engage in his First Amendment activity during the Market, USF considers Mr. Newton's activity to be prohibited under USF Policy 6-028.

62. In response to Mr. Marshall's directive, Mr. Newton declined to leave, asserting that MSC Plaza was a traditional public forum. *See* Video at 21:26–22:36.

63. Approximately ten minutes later, several uniformed USF Police Officers arrived on the scene. *See id.* at 31:00–10.

64. There was no reasonable suspicion or probable cause to believe that Mr. Newton had engaged or was engaging in criminal activity. Instead, Mr. Newton was simply engaged in protected activity under the First Amendment.

65. Regardless, one of the Officers asked Mr. Newton for his "I.D." *Id.* at 31:02–05, 31:14–17, 31:35–45.

66. Mr. Newton declined to give his "I.D." to the Officer. *Id.* at 37:10–40. Because there was no reasonable suspicion or probable cause to believe that Mr. Newton had engaged or was engaging in criminal activity, the Officer's request for Mr. Newton to provide his "I.D." was unlawful. Mr. Newton was under no obligation to provide his "I.D."

67. The Officer put Mr. Newton in handcuffs and arrested him. *Id.* at 37:50–38:10. Mr. Newton did not physically resist the arrest. *Id.*

68. The Officer told Mr. Newton he was being arrested for Trespass Upon School Grounds After Notice for failing to leave the Market and Resisting an Officer Without Violence for failing to provide his "I.D." *Id.* at 39:00–15. A copy of the Criminal Report Affidavit is attached as <u>Exhibit E</u>.

69. Under Fla. Stat. § 810.097(2), Trespass Upon School Grounds After Notice is a first-degree misdemeanor, punishable by up to one year in jail, one year of probation, and a fine of up to $1,000. Under Fla. Stat. § 843.02, Resisting Officer Without Violence is a first-degree misdemeanor, punishable

by up to one year in jail, one year of probation, and a fine of up to $1,000.

70. The USF Police Department also gave Mr. Newton a No Trespass Order. *See* Exhibit F.

71. Regulation USF4.0140 governs No Trespass Orders. *See* Exhibit G. Under Regulation USF4.0140, a No Trespass Order is "a written order by the University Law Enforcement office [that] direct[s] a person to leave, vacate, or stay away from USF property." *Id.* at § II. USF Police Officers have the authority to give a No Trespass Order to "[a]ny person who, in the opinion of University Officials, . . . is not using University Facilities in any appropriate manner or who is creating an atmosphere not conducive to the use of such facilities by other University Persons," among other reasons. *Id.* § III. If a No Trespass Order is given to a Non-University Person, it is not reviewable for one year after it is entered. *Id.* § V.C.

72. Under the No Trespass Order given to Mr. Newton, he is banned from returning to the USF campus until September 23, 2027. *See* Exhibit F. If Mr. Newton returns to campus before then, he is subject to arrest, regardless of the circumstances. *Id.* Under the No Trespass Order, Mr. Newton may not come to campus to visit his brother, who is a student at USF and has band performances on campus that Mr. Newton attends.

73. Because Mr. Newton is a Non-University Person under Regulation USF4.0140, he may not seek internal review of the No Trespass Order before

it expires. *See* Exhibit G.

74. The No Trespass Order excludes Mr. Newton from the entire USF Tampa campus through September 23, 2027. Its geographic scope extends far beyond the space reserved for the September 23, 2026 Market, and its year-long duration extends far beyond that event. It prohibits Mr. Newton from entering USF's Tampa campus even on days when no Market or other reserved event is occurring.

75. The No Trespass Order also prohibits Mr. Newton from returning to engage in peaceful expressive activity at subsequent Market events throughout the 2026–27 academic year. It applies even if he stands outside the space allocated to vendors, leaves sidewalks and entrances unobstructed, uses no amplification, and speaks only with persons willing to engage with him. Compliance with those conditions does not permit him to return while the Order remains in effect.

76. The No Trespass Order therefore prevents Mr. Newton from engaging in future speech and religious exercise without regard to whether his activity would interfere with any particular event or USF operation. Each subsequent Market that Mr. Newton wishes to attend presents another opportunity to communicate with his intended audience that he must forgo because of the Order and the accompanying threat of arrest.

77. After Mr. Newton's arrest, one of the Officers took him in a police

car to the county jail. He was held there for approximately fourteen hours, until he was released at 2:30 a.m. the next morning.

78. As of the date this Verified Complaint is being filed, the criminal charges against Mr. Newton are still pending.

79. By this action, Mr. Newton does not seek dismissal, a stay, or any other injunction against the pending criminal prosecution arising from his September 23, 2026 arrest, nor does he seek a declaration adjudicating his guilt or innocence or the validity of those charges. Instead, this action seeks only prospective relief from Defendants' continuing enforcement of Policy 6-028, Regulation USF4.0140, and the No Trespass Order insofar as they restrict his future access to campus and protected expressive activity.

**Mr. Newton Faces a Credible Threat of Ongoing Harm**

80. Mr. Newton wants to return to the Market each time it is held in 2026–27 and in future years for the foreseeable future. When he does, he wants to again hold his sign, or a similar sign, and speak with members of the public while standing in the same or a similar location at MSC Plaza.

81. Mr. Newton faces a credible threat that if he engages in his expressive activity at the Market, he will again be confronted by USF administrators and police; be directed to leave; be cited and arrested for trespass; and be imprisoned, fined, or both. The organizers of the Market have already determined not to allow Mr. Newton's First Amendment activity, and

there is no reason to think that they will change their minds and allow him to speak. Because of the consequences he faces if he attends future Market events, he will not do so.

82. USF's deprivations of Mr. Newton's rights are immediate, ongoing, and recurring. Based on USF personnel's statements to him on September 23, 2026, the Criminal Affidavit, and the No Trespass Order, Mr. Newton understands that if he returned to the Market on future dates and engaged in the same peaceful expressive activity he did on September 23, 2026, it is substantially likely that he would be arrested again. Indeed, the No Trespass Order specifically states that Mr. Newton "was advised that if [he] return[s] onto, or remain[s] at, [the USF Tampa Campus, he] will be in violation of . . . Florida Statutes prohibiting trespass . . . and be subject to arrest." Exhibit F.

83. Mr. Newton wanted to attend the Market on October 7, 2026 for the purpose of engaging in expressive activity, but he was fearful that he would again be threatened with citation or arrest, cited, or arrested. Mr. Newton cannot afford to continue to incur possible fines, nor does he wish to be imprisoned again. But for the threat of these consequences, Mr. Newton would have attended the Market on October 7, 2026, and engaged in the same or similar peaceful expressive activity as he did on September 23, 2026.

84. USF's actions as alleged herein have forced Mr. Newton to choose between refraining from constitutionally protected expressive activity and

risking arrest, citation, fine, and incarceration. The exercise of his rights is thereby burdened, deterred, and chilled.

85. Mr. Newton has no adequate remedy at law. The loss of First Amendment freedoms, even for minimal periods, constitutes irreparable injury. Absent relief from this Court, USF will continue to burden, deter, and prohibit his protected expressive activity, and he will continue to suffer the loss of his constitutional rights.

86. As of the date this Verified Complaint is being filed, the next iteration of the Market will occur on October 14, 2026. The remaining dates for the Bull Market during 2026-2027 school year are as follows: October 14, October 21, October 28, November 4, November 18, January 13, January 20, January 27, February 3, February 10, February 17, February 24, March 3, March 10, March 24, March 31, April 7, April 14, and April 21.

## CAUSES OF ACTION

### COUNT ONE
### 42 U.S.C. § 1983 — First and Fourteenth Amendments
### Right to Free Speech — Denial of Access to Public Forum

87. Mr. Newton hereby incorporates by reference all other paragraphs of this Verified Complaint as though fully set forth herein.

88. Mr. Newton seeks to engage in peaceful, non-commercial expressive activity at the Market—standing with a sign, speaking to passersby, and filming himself. This activity is protected by the First

Amendment.

89. MSC Plaza is a traditional public forum. The Plaza is akin to a park, and its physical characteristics and history of use, coupled with the Florida legislature's intent as set forth in the Campus Free Expression Act, confirm that MSC Plaza is a traditional public forum.

90. The Campus Free Expression Act expressly provides that outdoor areas of campus "are considered traditional public forums for individuals, organizations, and guest speakers." Fla. Stat. § 1004.097(3)(c). MSC Plaza falls within the Act's definition of outdoor areas of campus because it consists of generally accessible grassy areas, walkways, and similar common areas where members of the campus community are commonly allowed. *See* Fla. Stat. § 1004.097(2)(d).

91. In the alternative, MSC Plaza is a designated public forum. Through the Act, Florida has affirmatively opened generally accessible outdoor campus areas to public expressive activity, including spontaneous expression by individuals who are not University students or employees. *See* Fla. Stat. § 1004.097(3)(a)–(c). That legislative decision, together with the Plaza's accessibility and use as alleged above, demonstrates the State's intent to open MSC Plaza for public expression, including Mr. Newton's peaceful display of signs and verbal speech.

92. MSC Plaza remains a traditional or designated public forum

during the time the Market is occurring. The Market is outdoors, there is no fee to enter the Market, the Market is not surrounded by a fence or other physical barrier, and there is no controlled access for attendees.

93. The First Amendment protects the right to engage in peaceful expressive activity at traditional or designated public forums.

94. USF Policy 6-028 is unconstitutional, both facially and as applied to Mr. Newton.

95. Under USF Policy 6-028, USF reserves campus space for the sole use of the event unless the event organizers, in their unfettered discretion, determine that other First Amendment activities will be allowed to occur during the event.

96. USF Policy 6-028 is content based as applied to Mr. Newton.

97. USF Policy 6-028 does not comply with strict or intermediate scrutiny, both facially and as applied to Mr. Newton. USF lacks a significant interest in delegating to event organizers the power to decide what First Amendment activity will and will not occur, and Policy 6-028 is not narrowly tailored to serve any such interest. USF also lacks a significant interest in excluding Mr. Newton's First Amendment activity, and his exclusion is not narrowly tailored to serve any such interest.

98. USF Policy 6-028 also violates the unbridled discretion doctrine, both facially and as applied to Mr. Newton. The government may not grant

unbridled discretion to third parties to decide what First Amendment activity will and will not occur in a traditional or designated public forum. USF may not delegate to Market organizers the unbridled discretion to decide what First Amendment activity will and will not occur at the Market.

99. Regulation USF4.0140 is unconstitutional, both facially and as applied to Mr. Newton.

100. Under Regulation USF4.0140, USF Police Officers may issue a No Trespass Order to (1) anyone who, "in the opinion of University Officials, . . . is not using University Facilities in an appropriate manner or who is creating an atmosphere not conducive to the use of such facilities by other University Persons" or (2) "Non-University Persons at University Facilities . . . whose current conduct or reported conduct is deemed to present a threat to the orderly conduct of USF."

101. Regulation USF4.0140 is content based as applied to Mr. Newton.

102. Regulation USF4.0140 is unconstitutionally vague on its face. It does not define the meaning of the term "appropriate" or the phrases "atmosphere not conducive to the use of such facilities" or "threat to the orderly conduct of USF." As such, Regulation USF4.0140 fails to provide ordinary citizens fair notice of what is prohibited and encourages arbitrary and discriminatory enforcement.

103. Regulation USF4.0140 violates the unbridled discretion doctrine

on its face. It does not define the meaning of the term "appropriate" or the phrases "atmosphere not conducive to the use of such facilities" or "threat to the orderly conduct of USF."

104. Regulation USF4.0140 is unconstitutionally overbroad on its face. Its prohibitions sweep in a substantial amount of protected speech relative to its legitimate applications.

105. The No Trespass Order issued to Mr. Newton under Regulation USF4.0140 does not satisfy strict or intermediate scrutiny. USF lacks a significant interest in excluding Mr. Newton from campus. Moreover, Mr. Newton's exclusion—which applies across the entire campus and lasts a full year—is not narrowly tailored to serve any such interest, and his exclusion does not afford him adequate alternative channels of communication.

106. The Order's campus-wide scope and yearlong duration extend far beyond the particular event reservation invoked to justify Mr. Newton's removal, excluding him from the Tampa campus even when the Market's reservation is no longer in effect and from subsequent Market events regardless of whether his peaceful expression would interfere with those events.

107. As a direct and proximate result of USF's actions under USF Policy 6-028 and Regulation USF4.0140, Mr. Newton has suffered and will continue to suffer irreparable injury to his First Amendment rights, for which he has no

adequate remedy at law.

108. Mr. Newton is entitled to declaratory and injunctive relief and to attorneys' fees and costs under 42 U.S.C. § 1988.

## COUNT TWO
## 42 U.S.C. § 1983 — First and Fourteenth Amendments
## Free Exercise of Religion

109. Mr. Newton hereby incorporates by reference all other paragraphs of this Verified Complaint as though fully set forth herein.

110. Mr. Newton's display of signs, open-air proclamation of his religious and abolitionist message, and conversations with members of the public are exercises of his sincerely held religious beliefs.

111. Mr. Newton's religious exercise was burdened when he was directed to leave the Market, arrested, given a criminal citation, and given the No Trespass Order. Mr. Newton's religious exercise continues to be burdened.

112. Government action burdening religious exercise is subject to strict scrutiny when it is not neutral and generally applicable, including when the government confers or retains discretion to grant individualized exceptions or when comparable secular activity is treated more favorably than religious activity.

113. USF Policy 6-028 and Regulation USF4.0140 are not neutral or generally applicable, on their face or as applied. USF Policy 6-028 confers unbridled discretion on event organizers to determine whether First

Amendment activity will be allowed. Regulation USF4.0140 is so standardless that it confers unfettered discretion on members of the USF Police Department to determine whether to issue a No Trespass Order and, if so, how long the Order should last.

114. USF Policy 6-028 and Regulation USF4.0140 do not comply with strict scrutiny. USF lacks a compelling interest in delegating to event organizers the power to decide what First Amendment activity will and will not occur. And Policy 6-028 and Regulation USF4.0140 are not narrowly tailored or the least restrictive means to serve any such interest. USF also lacks a compelling interest in excluding Mr. Newton's First Amendment activity and his exclusion is not narrowly tailored to serve any such interest.

115. As a direct and proximate result of USF's actions under USF Policy 6-028 and Regulation USF4.0140, Mr. Newton has suffered, and absent relief will continue to suffer, irreparable injury to his First Amendment rights, for which he has no adequate remedy at law.

116. Mr. Newton is entitled to declaratory and injunctive relief and an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Tyler Newton respectfully requests that the Court enter judgment in his favor and grant the following relief:

1. Temporary, preliminary, and permanent injunctive relief

restraining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert with any of them, from: (1) enforcing USF Policy 6-028 on its face and as applied against Mr. Newton insofar as it precludes him from engaging in protected expressive activity at the USF Bull Market; (2) enforcing Regulation USF4.0140 on its face and as applied against Mr. Newton insofar as it precludes him from engaging in protected expressive activity at the USF Bull Market; and (3) prospectively enforcing the No Trespass Order to exclude Mr. Newton from campus;

2. A declaration that: (1) USF Policy 6-028 is unconstitutional on its face and as applied against Mr. Newton insofar as it precludes him from engaging in protected expressive activity at the USF Bull Market; (2) Regulation USF4.0140 is unconstitutional on its face and as applied against Mr. Newton insofar as it precludes him from engaging in protected expressive activity at the USF Bull Market; and (3) Defendants' continued enforcement of the No Trespass Order to prohibit Mr. Newton's future campus access violates his First Amendment rights;

3. An award of Mr. Newton's attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable law;

4. Retention of jurisdiction to enforce the Court's orders; and

5. All other relief the Court deems just and proper.

October 9, 2026

*<u>/s/ Joshua W. Dixon</u>*
JOSHUA W. DIXON
Lead Counsel
COURTNEY CORBELLO
EDWARD SATCHWILL
CENTER FOR AMERICAN LIBERTY
2145 14th Avenue, Ste 8
Vero Beach, FL 32960
(703) 687-6200
jdixon@libertycenter.org
ccorbello@libertycenter.org
esatchwill@libertycenter.org

*Attorneys for Plaintiff Tyler Newton*

**VERIFICATION**

I, Tyler Newton, declare under penalty of perjury under the laws of the United States of America, that Paragrpahs 1–8, 12, 32–46, and 49–116 of the foregoing Verified Complaint are true and correct.

Tyler Newton

October 9, 2026

# Exhibit A

Aerial Image of USF Campus


Lot 5A (Electric Vehicle Parking)
ChargePoint
Lot 5A
Elizabeth Ad
University of South Florida Tampa Bookstore
Book store
USF Cedar Cir
University of South Florida
Dining Services
USF Credit Union
Marshall Student Center
Panera Bread
Chick-fil-A
Fast Food
Bulls Outdoor Sculpture
Acorn Ct
USF SVC 1133
Student Services
USF Bust of Reverend Martin Luther King, Jr
MLK Plaza Fountain
Google Maps
Layers

# Exhibit B

Aerial Image of Newton Location


83°
AQI 43
Marshall
dent Center
3D
Student Services
Marshall Student Center
Academic Building

# Exhibit C

Video of September 23, 2026 USF Incident
Plaintiff is contemporaneously seeking leave to submit this audiovisual exhibit to the Clerk in non-electronic form.
Also available at https://bit.ly/4ybbjIO

# Exhibit D

Policy 6-028

UNIVERSITY OF SOUTH FLORIDA

POLICY

**Number:** 6-028
**Title:** Activities, Signage, and Use of Space
**Responsible Office:** Administrative Services

**Date of Origin:** 2-13-17 **Date Last Amended:** 8-25-26 **Date Last Reviewed:** 8-25-26

---

## TABLE OF CONTENTS

(Click title to jump to section)


**I.** Purpose & Intent 3

**II.** Statement of Policy 3

**III.** Applicability & Authority 3

**IV.** Definition of Terms 4

**V.** Process to Reserve Space 6

**VI.** Process to Modify Campus Space 7

**VII.** Conduct and Parameters for Activities and the Use of Space 7
- **A.** Expectations and Parameters
- **B.** Advertising for Activities
- **C.** Alcohol
- **D.** Chalking
- **E.** Displays, Tables, and Exhibits
- **F.** DVD/Video/Music/Video Game/Intellectual Property Usage
- **G.** Food
- **H.** Fundraising
- **I.** Guest(s) Policy
- **J.** Insurance
- **K.** Non-Commercial Literature
- **L.** Overnight Activities

**M.** Security and Safety
**N.** Signage
**O.** Sponsored Activities
**P.** Tents and Canopies
**Q.** Trash and Recycling
**R.** Volume of Spoken Words, Sound, and/or Music and Restrictions on Amplification
**S.** Photography

**VIII.** Provisions for Commercial Activities on Campus 17

**IX.** Enforcement 19
**A.** Buildings, Supervision, and Control
**B.** Response to Violations

**X.** Links for Reference 19

## I. PURPOSE & INTENT

The University of South Florida ("USF" and "University") is responsible for maintaining an environment that promotes the educational goals and mission of the institution. Fundamental to the mission of a public research university is the right to freely express ideas in the Public Spaces of the university, including ideas that some members of the USF community may find objectionable or even offensive.

University space, whether within buildings, or part of the grounds, parking lots, roads, or athletic facilities, are valuable resources and should be used to support the instruction, research, and public service mission of the University. University space and facilities will be used for the official and regular purposes and function of the University. The University may extend the use of specified space and facilities in a manner that best supports the mission of the University to the members of University community or to the general public subject to the provisions outlined within this policy and supporting procedures.

Public Space is open to the public and may be used for non-commercial and unamplified expression without registration or approval. The right to freely express ideas in Public Spaces carries the reciprocal obligation to respect the rights of others to pursue their education and access university services without disruption. The niversity balances these rights by applying content neutral limitations on Activities based on time, place, and manner. Because no policy can cover all factual situations, the University reserves the right to determine how to apply and interpret all time, place, and manner limitations on Activities.

## II. STATEMENT OF POLICY

This policy establishes parameters to all USF campuses for the use of spaces ensure the safety of the USF community, continuity of operations, and the engagement of the University campus. Nothing in this policy is intended to infringe on the rights of individuals to engage in lawful free expression. This policy shall be applied in a manner to ensure compliance with the most recent applicable state and federal laws and regulations.

This policy is superseded by any Joint-Use Agreement with the University enters for emergency purposes.

## III. APPLICABILITY & AUTHORITY

This policy applies to all USF campuses. To the extent campuses have unique characteristics, buildings, or other needs at specific campuses, this policy will be interpreted and administered by the appropriate campus leadership to accommodate unique circumstances In all cases, the President, or designee, retains the authority to determine whether Activities:

**A.** disrupt the functioning of the University; or

**B.** infringe upon the rights of other individuals or organizations including whether the Activities will or are disrupting:

- ingress or egress to or from University classroom or other facilities,
- travel across campus, or
- delivery of academic programs and services.

The President, or designee, has the authority to take appropriate action if there are reasonable grounds to believe an Activity presents an imminent threat to the health, safety, welfare, or operation of campus.

Where circumstances permit, the University may attempt to mitigate disruptions caused by Activities by using reasonable alternative means before cancelling or stopping an Activity. For example, the University may direct groups or individuals engaged in an Activity away from an Academic Space to an adjacent Public Space, if such space is available, and subject to the discretion of the President, or designee.

**Event Support Team:** The University's Event Support Team (EST) is available to help with planning Activities and understanding compliance with USF regulations and policies. Event organizers are encouraged to email the Event Support Team Coordinator at mmmarshall@usf.edu for resources for Activities in advance. During Activities, members of the EST provide a first and second level response, if needed, to ensure safety and compliance with USF Regulations and Policies.

## IV. DEFINITIONS

- **Academic Space:** The areas, buildings, and outdoor spaces that are used for academic purposes which can be curriculum, research, clinical, or recreational including classrooms, auditoriums, laboratories, faculty offices, libraries, student centers, study areas, medical centers, clinical facilities and hospitals, recreational fields, parking garages/lots, dining or residential housing, or any University buildings and administrative offices supporting the academic purpose.

- **Athletic Space:** The areas, buildings, and outdoor spaces reserved exclusively for use by the University's Department of Intercollegiate Athletics.

- **Building Supervisors:** The party designated to manage a building review  Office of Administrative Services (OAS).

  Building Supervisors

If a building does not have a specified building supervisor, the University may designate an office or administrator to make building specific decisions for temporary or short-term use of that building space consistent with the parameters of this Policy.

- **Departments:** Offices or specific administrative Departments with direct budgetary support or specific recognition by the University as an official USF Department or group.

- **Display:** A visual presentation or arrangement of items or information intended to attract attention, convey a message, or show/present something for others to see which can involve arranging objects, sharing information, or demonstrating a product.

- **Non-University Entity:** Entities that are independent or not officially recognized by the University.

- **Public Space:** Areas open to the general public and not used for academic or athletic purposes (see Academic Space and Athletic Space). Public Space is open to the public and may be used for non-commercial and unamplified expression without registration or approval.

- **Reserved Activity:** A use of space for a designated purpose. (This includes the designated use of space including events, tabling, programs, or use of space modifications. The term "event" may be used in certain spaces across campus when referring to Reserved Activities.)

- **Reserved Activity Request Process:** Request process for use of space by reservation.

- **Space Impact Process:** The process for a university community member to initiate a request to add or modify its physical space. The process is most often used for: adding/modifying signage, renovating or remodeling space (excluding routine maintenance), adding temporary space (e.g., trailers or Canopies), installing new aesthetic or cosmetic materials (e.g., sculptures, trees, banners, etc.), adding walls and/or cubicles (includes cubicle repairs and/or reconfigurations).

- **Student Organization:** A student group officially recognized by USF. (Please see USF Regulation 6.017 Student Organizations).

- **Student Organization Designee:** The person designated by or acting on behalf of the Student Organization to coordinate, plan, and/or execute the Student Organization Activity.

- **University Entity:** Entities that are officially recognized by USF through registration, agreement, or designation.

## V. PROCESS TO RESERVE SPACE

Reservations are preferred to avoid a conflict and to ensure availability of space or required due to Activity needs (amplified sound, tables, etc.). In addition, the use of Public Space for an Activity requires approval. Regardless of reservation, by using the Public Space, individuals assume all responsibility and/or costs or fines for the direct and indirect impact of their Activity and must abide by all University Regulations and Policies, and state and federal laws. Individuals who choose to exercise their expressive rights should understand that such rights are not unlimited. The university has an obligation to protect the rights of others and maintain the ability to conduct university business.

**A.** USF accepts requests to reserve space through established Reserved Activity Request Process and those reservations will designate the use of a specific space for the approved time and purpose.

**B.** University classrooms and space in academic buildings are available for approved USF Student Organizations, colleges, divisions, Departments, faculty, and staff for university academic purposes (www.usf.edu/space). These spaces may have limited uses to include reservations for a public event OR specific identified purposes such as eating, purchasing goods, studying provided that the use does not interfere or interrupt others in the area. The limited use does not make the academic space a Public Space. Interference would include the placing of objects or persons in manner that changes the ingress and egress to the space and interruption would include uninvited questions or engagement of individuals in the space unless permitted by a reservation request.

**C.** University-related groups may be charged for occupancy of University space. Non-University groups will be charged for occupancy of any University facility in accordance with the procedures set forth for such facility. If services to support the user of the University space (such as set-up, clean-up, etc.) are provided by University units, who charge the University community for their services, then all users should be charged. If charges are not routinely levied, but services above the normal level are required to support the customer's use of a facility, charges should be levied.

**D.** USF may impose health and safety requirements as part of the approval procedures. In the event that Facilities Management deems an event a health or safety risk, they reserve the right to partially or fully disapprove requests and/or an event or space use.

**E.** Spaces and resources for Non-University entities, groups, and organizations are available on USF campus. Below are the various locations or areas that may be reserved along with

the options and details to assist. The following links provide information and direction for requestors depending on the area where the Activity is proposed to take place.

- Academic, Public, or other University space NOT managed by the building specific processes
  https://www.usf.edu/administrative-services/service-center/event-request.aspx

- Marshall Student Center (MSC)
  (Manages specific areas including MSC, MSC Plaza, MLK, National Pan-Hellenic Plaza, etc.)
  https://www.usf.edu/student-affairs/msc/plan-and-market-events/index.aspx

- St. Petersburg Campus University Center
  https://www.stpetersburg.usf.edu/student-life/university-student-center/plan-your-event/index.aspx

- USF Tampa Campus Event Space
  (map identifies the appropriate point of contact for the venue/space)
  https://maps.usf.edu/portal/apps/webappviewer/index.html?id=8e7befdee99a4a00aa6c2f3d9a0decf0

**F. Conflicting Requests**

**1.** Conflicting requests for use of space occur infrequently because of the variety of facilities and time periods available. However, because space is a limited resource, if a conflict occurs, use should be scheduled in accordance with the following priority order:

**a.** Commencement, orientation, or athletic/academic activities that may require police presence or impact parking

**b.** Credit instruction, research, and curricular events such as recitals and symposia.

**c.** University-sponsored, non-credit instruction.

**d.** An event or program that is associated with a part of the University curriculum, offered by an academic department, and targeted for a Non-University audience, in addition to university participants.

**e.** Extracurricular - Events or programs that enrich the University student experience such as student government sponsored programs, lecture series, Student Organization activities, intramurals, and recreational sports

**f.** University-sponsored conferences and institutes

**g.** Alumni and Foundation Activities

**h.** Professionally associated activities - events or programs offered by professional associations that are related to the academic disciplines or career fields of University faculty or staff in which University faculty or staff are members

**i.** Public Service Events

**j.** Private Events

## VI. PROCESS TO MODIFY CAMPUS SPACE

All requests for modifications to campus space must be pre-approved through the University's Space Impact Process. Modifications to campus space include but are not limited to:

- Adding/modifying signage, including temporary signage
- Adding temporary space (e.g., trailers and canopies)
- Installing new aesthetic or cosmetic materials (e.g., sculptures, trees, banners, etc.)
- Renovating or remodeling space (excluding routine maintenance)
- Adding walls and or cubicles (includes cubicle repairs and/or reconfigurations)

Any questions about the Reserved Activity Request Process or Space Impact Process may be directed to OAS at FM-ServiceCenter@usf.edu.

## VII. CONDUCT AND PARAMETERS FOR ACTIVITIES AND THE USE OF SPACE

### A. Expectations and Parameters

The following section provides the expectations and parameters pertaining to both Reserved and other Activities. Please note that Commercial Activities may have unique parameters and requirements; information concerning Commercial Activities is located below in Section VIII.

1. At all times, students and university employees are expected to adhere to the standards of conduct applicable to them including but not limited to University regulations, policies, codes of conduct, collective bargaining agreements, etc., as well as state and federal laws. Nothing in this policy is intended to infringe on the rights of individuals to engage in lawful free expression.

2. Students, Student Organizations, faculty, staff, or members of the USF community shall not serve as agents or sales representatives on the campus for external

organizations, unless approved by the University or included in an employee's assignment.

3. All persons must comply with federal and state laws including but not limited to Florida Statutes §877.03 and §877.13(public disruption).

4. In compliance with Florida Statute §876.12, masks may not be worn during activities to conceal identity and create disruption.

5. Any areas used for academic and business operations including parking areas, waiting areas and areas for lines/queues for those operations; reserved as Reserved Activities; or outdoor academic classes, will be considered a USF location that is not Public Space during that reserved or affected time.

6. Activities must comply with the building, department, campus, or organization specific guidelines, college or University policy, regulation, and state or federal law.

7. Activities must not disrupt the University's mission or business nor impede or block sidewalks, building entrances and exits, individual space entrances and exits, or other areas for normal traffic flow or parking areas. In areas that require permits or reservations, appropriate paperwork must be completed and approved. Specific permits may be required depending on the extent of the use.

8. Amplified sound is permitted on campus provided below in Section VII.R.2.

9. To provide an environment conducive to preparation of final or cumulative exams, the final two weeks of any academic term, no Activities will be permitted in or near Academic Spaces on campus, without reservations.

10. The University may impose other and additional content neutral time, place, and manner limitations on any Activity.

**B. Advertising for Activities**

Activities requiring reserved space are not permitted to be advertised until final confirmation for space is secured. All Activities must comply with USF Policy 0-215 Use of USF Name and Symbols regarding use of logo.

**C. Alcohol**

Refer to the USF Policy 30-023 Alcohol Policy.

**D. Chalking**

University Departments or Registered Student Organizations are permitted to chalk for the following reasons:

- To promote and provide directions to Reserved Activities held on the campus.
- To promote Reserved Activities.

Chalking must be clear and legible and bear the name of the Registered Student Organization or University Department. Chalking may not be used for commercial advertisement or commercial purposes. In general chalking is to be done only on sidewalks. Chalking is prohibited on buildings, stairways, walls, fountains, covered walkways, breezeways, or other surfaces not designated for this purpose. Chalk sprays, markers, or paint of any kind are not permitted. Chalking Activities that comply with these rules are not required to submit a separate Reserved Activities Request. Violations of these guidelines may result costs for removal and the costs will be assessed on the University Entity identified as responsible. Nonpayment of the costs will result in deactivation of a Student Organization or other sanction.

**E. Displays, Tables, and Exhibits**

1. Displays, tables, and exhibits need prior approval using the Reserved Activity Request or Space Impact Process (see V above).

2. Sponsors of Displays and exhibits that require interaction and/or participation from bystanders/individuals must ensure that a USF student or employee is present and responsible for the Display, tables, or exhibit at all times.

3. Displays and exhibits on lawns must be weighed down with water bags or sandbags. No staking is permitted. Exceptions to this policy must be approved by the Space Impact Process.

4. USF is not responsible for Displays, tables, materials, or exhibits that are damaged or stolen.

5. A sponsoring group must obtain prior approval from OAS, if they drive on surfaces that are not roads or parking lots for delivery. Once the materials are dropped off, the delivery vehicle must come back at the end of the reservation period to pick up the materials. If the delivery vehicle is an over-sized vehicle, it may only be parked on campus with a special permit obtained from Parking and Transportation Services. Average sized vehicles may park in the designated visitor parking areas, but will require parking permit. USF is not responsible for setting up or taking down Displays, tables, or exhibits unless provided by the University.

6. Vehicles on display must remain parked within the designated area assigned to them. Vehicle engines must remain off while on display.

**F. DVD/Video/Music/Video Game/Intellectual Property Usage**

Federal copyright law restricts the use of material protected under Intellectual Property rights for private showings and prohibits their public performance without written consent of the holder of the copyright. A physical license from an approved booking agency is required prior to the start of the Activity. Failure to produce the license will result in a request cancellation and application of cancellation fees and possible legal or university conduct ramifications.

**G. Food**

1. Activities involving food or drink must have a reservation through the Reserved Activity Request Process.

2. Private meetings or get-togethers (potlucks, office retreats, etc.) within organizations, Departments, etc. are not subject to these requirements.

3. University Entities serving food items will follow the policy guidelines below.
   a. If the food is being served by an approved commercial food service vendor or a USF-approved caterer, or if the food/drink is prepackaged and individually sealed by a manufacturer, no food safety training is required.

   b. If the food does not meet the above criteria, the University Entity serving the food must ensure that two (2) two (2) individuals from the sponsoring group have obtained Florida Food Handler Safety Certification (ServSafe® Products List). These certified individuals must be present during the event.

4. Food prepared in a private residence shall not be offered for sale or given away to the university community or visitors on campus (except under Section G.2).

5. Any entity wanting to serve or sell food, or drinks must be licensed to serve food in the state of Florida and/or have submitted a food release and have an approved Reserved Activity Request. The Activity planner is required to adhere to the EH&S Event Safety Manual for food serving guidelines.

**H. Fundraising**

1. All fundraising Activity must prominently display the name of the philanthropic agency or beneficiary of the funds and the percentage of funds to be donated to the agency and follow all applicable Activity policies.

2. The fundraiser planner is responsible for all associated costs incurred with the fundraising Activity.

**I. Guest(s) Policy**

1. All USF policies are applicable to visitors and guests. Additionally, each person or entity sponsoring an Activity is responsible for the behavior of their guest(s).

2. Non-University guests who wish to attend an Activity sponsored by a University Entity may be required to be accompanied by a USF representative (student, faculty, or staff member) with a valid USF identification card. Non-University guests must show a valid drivers' license or another form of picture ID upon request. Guests may be required to be registered for some Activities.

**J. Insurance**

Activities may be required to have additional insurance. This will be determined through the Reserved Activity Request Process.

**K. Petitioning and Non-Commercial Literature**

1. Literature is a printed document of any size including a flyer, pamphlet, and/or paper.

2. Petitioning and distribution of non-commercial material or literature may occur in any outdoor Public Space. The literature must be distributed in an appropriate manner so that it does not litter the campus. Student Organizations are not permitted to distribute literature which advertises Activities on or off campus where alcohol will be sold or given away. Additionally, no material of any kind may be placed on automobile windshields.

3. No literature of any kind may be placed on automobiles. Posting is not permitted on trees, poles, fences, sidewalks, or buildings.

4. Violations of these requirements may result in fines to the University Entity.

**L. Time and Hours**

1. <u>Regular Business Hours – 7:00am through 5:00pm Monday thru Friday</u>
   Space may be used as outlined above.

2. <u>Weekend Hours – 7:00am through 5:00pm Saturday and Sunday</u>
   Space may be used as outlined above except when the activity is or is reasonably anticipated to be posted, advertised, or publicized in advance of or during the activity; a reservation through the Reserved Activity Request Process is required.

3. After Business Hours – 5:00pm through 12:00am Everyday
A reservation through the Reserved Activity Request Process is required.

4. Overnight Hours – 12:00am through 7:00am Everyday
University Student Organizations or Departments may request a reservation through the Reserved Activity Request Process. Any Overnight Activity may be assessed additional costs for health and safety needs based on review by University Police, Environmental Health and Safety, and OAS. University Entities wishing to use the University outdoor spaces and/or indoor venues overnight must secure permission from the appropriate facility manager prior to their reservation. This may involve the use of the Space Impact Process or the Reserved Activity Request and may require additional or specific insurance to be secured by the requestor and may incur additional costs. Scheduled classes or approved academic or official university Activities that are incorporated are exempt from this Overnight Activity requirement.

5. Non-University Entities are not allowed to host Overnight Activities occurring at indoor and/or outdoor venues.

6. Violations of these requirements may result in costs or fines for related expenses incurred by the University.

**M. Security and Safety**

1. Any speaker or performer is responsible for following all University policies and regulations.

2. All hosts are expected to provide a safe environment for their Activities and may be required to utilize the University Police Department services, security services, and/or other emergency services as directed through the Reserved Activity Request Process. Required use of these services or any necessary contractual obligations resulting in additional cost to the university will be the responsibility of the host.

3. Any Reserved Activity Request may be referred to the University Police Department (UP) for review and assessment of security needs. UP is the designated office responsible for making a final determination of adequate security needs. The security-related costs will be the responsibility of the Activity sponsor(s) and must be paid before the Activity.

**N. Signage**

Only students, Student Organizations, or University Departments may place signage to promote a Reserved Activity. Signage must be approved before posting except as legally

required for by federal or state guideline with regard to official polling places. Signage that does not need to be approved may only be hand-held signage or attended, unattached, and/or properly weighted A-frame signage not exceeding 4' x 3' in size. Any non-compliant signage will be removed, and costs or fines of removal or cleanup assessed back to the person/organization whose name appears on the signage and/or the person placing the signage.

1. Exterior Signs
    a. Requests to post unattended signage on USF campuses (A-frames, real estate type yard signage, flyers, etc. must be approved through the Space Impact Request Form (Tampa) or a Space Modification Request (St. Petersburg)).

    b. Signs and notices are to be placed only on authorized boards, A-frames, or in door card holders, except as provided herein. No signs are to be attached to any building, tree, or light post or any other university property except as designated herein. Signs may not be placed on walls, doors, or windows.

    c. Signage can only be posted for a maximum of two (2) weeks. The requestor is responsible for removing signage after the approved timeframe. Failure to comply will result in the signs being removed and costs or fines of removal to the person/organization/department who requested the signage.

    d. Student Government (SG) election related posters or signs not exceeding 4' x 3' width may be utilized fifteen (15) days before election day plus an additional seven days for runoffs and do not need prior approval, however all campaign materials must abide by the restrictions of this policy and SG policies and may only be placed in designated areas approved by OAS.

    e. Signs may not be placed in a manner which would block a driver or pedestrian's view at any time or any location. Signs placed along the roadway must be placed a minimum of 30 feet (30') from an intersection. They must not block any passageway, obstruct any buildings, signs, or other structures, or otherwise unreasonably distract or interfere with others in carrying out their normal functions and must be removed immediately following the Reserved Activity. OAS office may be consulted when there are any questions concerning the desired location of a sign.

    f. *Directional Signs*: Directional signs for meeting, conferences and Activities being held must be approved by OAS. OAS must approve the type, size, location, duration, and count of signs.

**g.** *Parking Signs*: All parking related signs, including permanent, directional, Activity signs or signs to inform of changes in parking designations shall be posted after review and approval by the Parking and Transportation Services Division.

**2.** Interior Signs

**a.** Small signs (under 8" x 11") may be posted on the open posting board in the Marshall Student Center or other approved designated bulletin boards. Postings must be approved by the appropriate Building Supervisor unless it is clearly an open posting board.

**b.** All persons wishing to post materials directly related to a building event or building usage as described in Section (3) below for an identified period of time including banners, flyers, etc. in a USF building must receive prior approval from the person responsible for supervision of the affected building and/or contact the appropriate Building Supervisor for additional information. USF students, Student Organizations, faculty, and staff will be given priority over Non-University persons and Entities.

**3.** USF Buildings and Information

Building Supervisors may approve recurring or single requests to post information regarding available USF Services, hours of operation, specialized information, or student related support options.

**4.** Enforcement

Signs that are improperly constructed, placed, or allowed to deteriorate into a state of disrepair may be removed immediately by OAS or by the Parking and Transportation Services Division. Violations of this Policy may be reported for sanctions, cost recuperation, or legal action.

**5.** Permanent Sign

See USF Policy 6-022 Campus Design & Construction Program.

**O. Sponsored Activities**

University Entities that are co-sponsoring an Activity with a Non-University organization shall be responsible for the Activity. A USF student, employee, or staff member must always be with the Activity. In addition, the University Entity must post a sign that is visible to the public identifying the student group or University Entity as the sponsor for the Activity.

**P. Tents & Canopies**

1. University Entities along with their co-sponsoring groups may set up 10' x 10' canopies outdoors during their Activities no earlier than 7:00am and no later than 5:00pm with approval through the Reserved Activity Request Process. Canopies are the responsibility of the sponsoring organization and must be attended at all times. Canopies must be placed at a minimum of 10' away from USF facilities. Canopies may be on campus only between the hours of 7:00am and 5:00pm and not be left out overnight unless approved through the Reserved Activity Request Process. Other canopy or tents may be approved for use through the Space Impact Process which will also require a Tent Permit from USF's Building Code Administrator. More information regarding tents can be found in the USF EH&S Event Safety Manual.

2. USF is not responsible for canopies or tents that are damaged, missing or stolen or for removing canopies or tents unless they have been provided by the University.

3. Any cost or fines incurred for removal or enforcement will be assessed against the responsible party.

**Q. Trash and Recycling**

Groups that sponsor outdoors Activities on campus are responsible for minimizing their waste stream and cleaning up the space used. Trash bags must be taken to nearby dumpsters. To request recycling and trash containers at the Tampa campus please contact OAS at 813-974-2845. To request recycling and/or trash containers at USFSP, please go to https://www.usf.edu/administrative-services/facilities/requests/index.aspx or contact Facilities Services ("FS") for additional information. Spaces that are not cleaned up and require additional services not originally requested may result in cleaning fines.

**R. Volume of Spoken Words, Sound and/or Music and Restrictions on Amplification**

1. General

Groups or individuals have a duty and obligation to control the level of sound so that their programs, Activities, or presentations do not disturb classes or unduly hinder other members of the university community from engaging in their tasks or Activities or from enjoying their right to privacy within their living, working, or social spaces. The sound level of any communication must be limited to what is necessary for the Activity without excessive intrusion or interruption in adjacent areas. In addition to abiding by the guidelines in this policy, persons must abide by the county and state law and local ordinances regarding noise pollution as defined by Florida Statute §403.031(7). The University administrators may request sound levels to be reduced to eliminate a disruption or interference with University

process and mission. The USF Environmental Health and Safety Department or other law enforcement agency may determine if there is a state or county violation.

2. Amplification of Sound

No amplification of sound is permitted except as follows:

a. Only University Entities or organizations will be permitted to use amplified sound in any area and must have an approved Reserved Activity Request. Any amplification must be at an acceptable distance from academic or administrative buildings as determined by the approving entity or designated representative.

b. Generally, amplified sound may only be permitted in the following designated areas, and only with an approved request, however, space and contact information may change, please contact OAS for the most up to date locations as appropriate:

| **Outdoor Space for Amplified Sound** | **Appropriate Contact** |
|---|---|
| **Tampa Campus** | |
| All Residential Halls outdoor spaces | Housing |
| Greek Village | Housing |
| Crescent Hill | Marshall Student Center |
| MSC Plaza | Marshall Student Center |
| MSC Stage Foundation | Marshall Student Center |
| MSC Amphitheatre | Marshall Student Center |
| Martin Luther King Plaza | Facilities Management |
| Fowler Field | Campus Recreation |
| Magnolia Fields | Campus Recreation |
| Intramural and Recreation Fields | Campus Recreation |
| FIT Pool | Campus Recreation |
| Rec Tennis Courts | Campus Recreation |
| Research Park Fields | Campus Recreation |
| Sand Volleyball Courts | Campus Recreation |
| USF Riverfront Park | Campus Recreation |
| Athletic Facilities | Athletics |
| | |
| **St. Petersburg Campus** | |
| Harborwalk | Student Centers and Events |

| | |
|---|---|
| Harbor Lawn | Student Centers and Events |
| SLC Lawn | Student Centers and Events |
| Rec Pool | STP Campus Recreation |
| Rec Courts | STP Campus Recreation |
| Edge Patio | STP Campus Recreation |
| Rec Field | STP Campus Recreation |
| Boathouse/Dock | STP Campus Recreation |
| West Deck Lawn | STP Campus Recreation |
| Library Patio | Nelson-Poynter Memorial Library |

**S. Photography**

**1.** No photography for commercial purposes is permitted without express permission.

## VIII. PROVISIONS FOR COMMERCIAL ACTIVITIES ON CAMPUS

USF defines commercial solicitation and sales as offering goods or services for sale either by advertising or direct sale that results in financial gain to the person selling the items or to a business or an organization. USF authorizes commercial solicitation by external organizations only through formal written contractual relationships. Commercial solicitation or the sale of goods and services by external organizations is otherwise regulated by USF Regulation 6.026 Distribution of Material and Solicitation on Campus.

**A.** Door-to-door solicitation is not permitted, including solicitation in USF housing and residence halls.

- External or internal organizations or individuals desiring to solicit or sell goods or services may do so in designated areas on campus. Refer to https://www.usf.edu/administrative-services/service-center/event-request.aspx for campus specific designated areas. University organizations with primary responsibility for contracts and agreements, including but not limited to Food Services and Auxiliary Services can be exempted from this requirement.

**B. Fundraising**

Fundraising and promotional Activities by employees and USF Departments shall be reviewed and approved by the appropriate Vice President.

**C. Food Sales**

All food and drinks must be obtained from, packaged, and or prepared by an approved food service vendor (food store, bakery, restaurant, licensed food contractor such as USF Dining Services and/or is a USF Approved Caterer or food distributor which has been approved by the Florida Department of Health.

An entity wanting to serve or sell food, or drinks must be licensed to serve food in the state of Florida, and/or have submitted a food release and have an approved Reserved Activity Request. The Activity is required to adhere to the EH&S Event Safety Manual for food serving guidelines.

**D. Distribution of Commercial Literature**

1. The distribution of commercial literature is regulated by USF Regulation 6.026 Distribution of Material and Solicitation on Campus. USF prohibits:
   - **a.** the posting, distributing, stacking or placement in racks of any commercial material or advertisements and
   - **b.** attaching commercial material or advertisements to automobiles, fixtures, bicycles or any permanent or temporary physical structure not directly related to University business without specific approval as provided in this policy or USF regulations and policies including USF Regulation 4.0010 Parking General Guidelines, Registration, Rates, and Penalties and USF Policy 6-035 Abandoned Vehicles.

2. Commercial materials that are not personally (hand-to-hand) distributed need to include the name of the party responsible for the printing and distribution of the commercial materials.

3. Any commercial material, publication or automobile, fixture, bicycle or any permanent or temporary physical structure used in violation of this policy will be removed, destroyed, or impounded at the discretion of the University Police Department or appropriate department. Violation of this policy may also be in violation of Florida Statute §403.413 Florida Litter Law. All costs or fines incurred in the enforcement of this policy will be the responsibility of (1)the commercial entity distributing or posting the literature and/or (2) whose name appears on the commercial literature.

4. No material may be placed on automobile windshields or posted except in designated and approved areas. The University Entity whose name appears on the literature or materials found on USF property will be required to immediately remove the materials and any costs or fines related to the clean-up or related efforts will be charged to the University Entity.

5. Restrictions on Email Use
   USF Information Technology may restrict the unauthorized use of the USF email addresses or system for commercial solicitation purposes including blocking

commercial solicitation or other use of email prohibited by USF Policy 0-502 Appropriate Use of Information Technology Resources.

6. Enforcement

Any goods or property displaced, sold, or used on a USF campus for commercial purposes without appropriate authorization for the commercial communication, including but not limited to the actual sold property, goods, or any structure/bicycle/vehicle/physical frame upon which any commercial literature is displayed, may be discarded, or impounded by the appropriate University department. Impounded property may be destroyed or sold at auction with costs or fines assessed against the responsible party named in the literature or against the owner of the goods or property. To avoid sale at auction the owner may take appropriate action which may include:

- The owner provides proof that the property is not contraband.
- The owner makes an agreement with the University to sell the goods on campus; or
- The owner secures a court order for release of the property.

## IX. ENFORCEMENT

**A. Buildings, Supervision and Control**

Authorized University officials and those designated by OAS representatives maintain the authority to request a disruptive person inside or outside of the building leave the premises pursuant to USF Regulation 4.0140 No Trespassing and Loitering and Policy 6-012 Access Control to Buildings and Facilities.

**B. Response to Violations**

1. Any authorized University official (defined in USF Regulation 4.0140 No Trespass and Loitering) may request a person in violation of this policy to cease the violation or to leave the premises.

2. Non-University Entities are subject to being restricted from campus and may be issued a no-trespass warning by the respective campus policing authority and/or be subject to appropriate law enforcement action. Students and Student Organizations will be referred to the Office of Student Conduct and Ethical Development for violations of the Code of Student Conduct. Other University Entities will be referred to the appropriate office or supervisor. All violators are subject to appropriate law enforcement action

3. In addition, any related costs or fines will be passed on to the violator.

## X. LINKS FOR REFERENCE

- Florida Statute §403.413
- Florida Statute §403.031(7)
- Florida Statute §876.12
- Florida Statute §877.03
- Florida Statute §1004.097
- USF Regulation 4.0010 Parking General Guidelines, Registration, Rates, and Penalties
- USF Regulation 4.0140 No Trespass and Loitering
- USF Regulation 6.017 Student Organizations
- USF Regulation 6.026 Distribution of Material and Solicitation on Campus
- USF Policy 0-215 Use of USF Name and Symbols
- USF Policy 0-502 Appropriate Use of Information Technology Resources
- USF Policy 6-012 Access Control to Buildings and Facilities
- USF Policy 6-022 Campus Design & Construction Program
- USF Policy 6-035 Abandoned Vehicles
- USF Policy 30-023 Alcohol Policy

## HISTORY

**Date Approved:** Feb. 13, 2017
**Substantively Amended:** Aug. 19, 2024, July 8, 2024
**Technically Amended:** Aug. 25, 2026, May 19, 2025, May 7, 2025, Apr. 28, 2025, Apr. 24, 2025, Jan. 31, 2025, Dec. 6, 2024, Aug. 26, 2024, Jan. 23, 2024, Jun. 28, 2023, Sept. 7, 2022, Apr. 10, 2018, Aug. 31, 2017, May 9, 2017
**Biennial Review:** Jan. 31, 2025, Jan. 30, 2023
**Other:** Jul. 1, 2020 (Consolidation)

# Exhibit E

Criminal Report Affidavit

# CRIMINAL REPORT AFFIDAVIT/HILLSBOROUGH COUNTY, FLORIDA

○ Supplemental Page ○ Plant City Courthouse ○ Notice To Appear CRA #: UP26000186

○ Fel ◉ Misd ○ (APAD) Adult Pre-Arrest Div ○ Traffic ○ Tampa Ord ○ Juv Delinq ○ JAAP Booking #: 2026-33484

Arrest Type: ◉ PC ○ Warrant ○ PC VOP/VOCC **Request:** ○ Warrant ○ SAO Review Direct File ○ JUV Pick-Up Order

Court Case # Family # SOID #

Agency: ○ HCSO ○ TPD ○ PCPD ○ TTPD ○ FHP ◉ Other: USFPD Report # 26-000612 Report Written ◉ Yes ○ No

| | | | |
|---|---|---|---|
| Offense Location: 4103 USF CEDAR CIR, TAMPA, FL 33620 | Offense Date: 09/23/2026 | Offense Time: 1101 | |
| Arrest Location: 4103 USF CEDAR CIR, TAMPA, FL 33620 | Arrest Date: 09/23/2026 | Arrest Time: 1101 | |
| Defendant: Last Name NEWTON | First Name TYLER | Middle Name JAKE | ○ Gang Name: |
| Race White | Gender ◉ M ○ F | DOB [redacted] | DL# [redacted] |
| State FLORIDA | POB (City, State) FLORIDA | | |
| Address Street: [redacted] | City: [redacted] | State: FLORIDA | Zip: [redacted] |
| School (JUV) | Parent/Guardian (JUV) | | |

No Co-defendants Found

| Statute | Level | Degree | Charge | Count | Citation # | DV |
|---|---|---|---|---|---|---|
| 843.02 | Misd | F | RESISTING OFFICER WITHOUT VIOLENCE **(COPS1001)** | 1 | | ○ |
| 810.097(2) | Misd | F | TRESPASS UPON SCHOOL GROUNDS AFTER NOTICE **(TRES2282)** | 1 | | ○ |

The undersigned swears there are reasonable grounds to believe that the above named defendant in Hillsborough County, Florida, did:

On 09/23/2026, at approximately 1045 hrs, I responded to USF Cedar Cir, Tampa FL 33620, regarding subjects who remained on campus after given a notice.

Upon arrival, I made contact with Tyler Jake Newton (W/M, DOB:10/09/1998), who was later arrested for the following statutes:

Knowingly and willfully resist, obstruct, or oppose Sergeant Fisco, a duly and legally constituted Police Sergeant of the University of South Florida Police Department, while in the lawful execution of a legal duty, which consisted of Tyler Jake Newton (W/M, DOB:[redacted]) without offering or doing violence to the person of the Officer. (Misdemeanor)

Willfully entered or remained upon a campus, to-wit: The University of South Florida located at (4202 East Fowler Avenue), after an duly authorized designee of the property of University of South Florida gave notice not to enter the campus on 09/23/2026. (The notice expires on 09/23/2027)

Pursuant to Florida Statute §92.525 and under penalties of perjury, I declare that I have read the foregoing document and the facts stated in it are true to the best of my knowledge. For Notices to Appear, I also certify that a complete list of witnesses and evidence known to me is attached.

| Affiant: | Officer # | DIST | SWORN TO AND SUBSCRIBED BEFORE ME THIS DATE | Officer # |
|---|---|---|---|---|
| E Lima Garcia<br>Digitally signed on 2026.09.23 11:49:53 | 450 | SQD PTL | Corporal C Bennett<br>Digitally signed on 2026.09.23 11:50:50 | 327 |

Judgment requested against defendant for agency investigative cost per Florida Statute 938.27: ________

**Additional Victims / Witnesses**

**Defendant**

(SERVICE OF COURT DOCUMENTS may be served on the State Attorney's office at IMailProcessingStaff@sao13th.com)

# Exhibit F

No Trespass Order

UNIVERSITY OF SOUTH FLORIDA POLICE DEPT

# NO TRESPASS ORDER (NTO)

Indefinite: [NO]
Expiration: 09/23/2027

Warning# TWN001391A
Incident# USF26CAD047140
Case# USF26OFF000612

The following named person:
TYLER JAKE NEWTON
DOB: [redacted] Sex: M Race: W Height: 511 Weight: Hair: Eyes:
Home Address: [redacted] FL [redacted]
Drivers License / ID Number: [redacted] State: FL

was ordered to stay off the **USF TAMPA CAMPUS** located at:
**4202 E FOWLER AVE , TAMPA, FL 33602**

by the officer identified below, who has been authorized by the university to issue this order. This order was issued on the **09/23/2026 11:34AM.**

Additionally, the above named person was advised that if they return onto, or remain at, said property that they will be in violation of applicable provisions of Chapter 810, Florida Statutes prohibiting trespass, USF Regulation 4.0140:No Trespass and Loitering, and be subject to arrest. USF Regulations can be reviewed by visiting: http://regulationspolicies.usf.edu/

Reason: **OFFICER DISCRETION**

Additional Comments (If Applicable):
**On Wednesday September 23, 2026 officers responded to the USF Marshall Center located at 4103 USF Cedar Drive in reference several people protesting and refusing to leave. Contact made with subject Tyler J. Newton [redacted]**

**Prior to USFPD arrival, the USF event response time had responded out, including Matt Marshall and explained the areas on campus where Newton could be with his signs. Newton did not leave when asked to do so by the USF event response team.**

**Newton refused to provide identification to the officers on scene.**

**Due to these actions, Newton was arrested and issued this trespass.**

Officer: **BENNETT, CHAD A** Org/Unit: **USF** Rank: **CORPORAL** ID Number: **327**

# Exhibit G

USF4.0140

UNIVERSITY OF SOUTH FLORIDA

REGULATION

**Number:** USF4.0140
**Title:** No Trespass and Loitering
**Responsible Office:** Administrative Services

**Date of Origin:** 3-17-11 **Date Last Amended:** 6-26-24 **Date Last Reviewed:** 1-31-25

## I. STATEMENT OF REGULATION

The President, as the Chief Executive Officer of the University of South Florida System (USF or University) and the Chief Administrative Officers* at USF Campuses have the responsibility for the operation and administration of their campuses and facilities. The President and those Administrative Officers have designated the University Law Enforcement officers (University Law Enforcement) to provide for the safety and security of their individual institutions and campuses. University Officials and University Law Enforcement may request individuals to leave or vacate the premises. Designated Personnel and University Law Enforcement may issue No Trespass Orders (NTO) as set forth in this Regulation. *(As each USF Campus has unique characteristics and offices, "Administrative Officer" and "University Law Enforcement" may be different on each USF Campus and the specific titles and offices may change. Contact the Chief Student Affairs Officer or University Law Enforcement Office at the applicable USF Campus for the most current titles and contact information.)

## II. DEFINTIONS

- **Authorized University Business**: Activity which furthers the mission and purpose of USF and business that has been approved by the appropriate University Officials.

- **Designated Personnel:** Persons identified by the President as having the authority to issue a No Trespass Order (NTO).

- **No Trespass Order (NTO)**: A No Trespass Order (NTO) is a written order issued by the University Law Enforcement office responsible for USF or campus security and will direct a person to leave, vacate or stay away from USF property or offices. The NTO is in effect for the period indicated (it may be temporary) by the Chief Student Affairs Officer, or their respective designees, after independent review or as a

result of the Student Conduct Process or Trespass Review process as set forth in this Regulation.

- **Non-University Persons**: All other persons who are not classified as University persons.

- **Time(s) or Day(s):** Means "academic time" or "academic days" which are the periods of academic session to include the days the University is open for business and delivery of academic services exclusive of holidays, emergency closings or other days where the office or academic delivery of services are closed. The person vested with authority at the appropriate level may extend any of the time periods contained herein for good cause.

- **University Facilities**: All campuses and centers operated by USF, including all buildings and grounds of such campuses and centers; and all locations, buildings, or grounds utilized by USF for Authorized University Business.

- **University Law Enforcement:** The designated office at each USF Campus vested with the responsibility of maintaining and addressing the safety and security of each USF Campus.

- **University Officials**: Employees of USF responsible for the control, supervision or operation of a building, classroom, or USF property. This includes building managers, facility managers, administrators, instructors, or other persons in a position of responsibility of the area in question.

- **University Persons**: Those persons who are current faculty, administration, staff, students or temporary employees of USF, and those persons who are in or on University Facilities to fulfill contractual obligations.

## III. APPLICABILITY AND/OR AUTHORITY

Any person who, in the opinion of University Officials, is violating or has violated the law, USF regulations or policies, or is prowling, loitering, or is not using University Facilities in an appropriate manner or who is creating an atmosphere not conducive to the use of such facilities by other University Persons or authorized guests, may be immediately (1) reported to University Law Enforcement to enable University Law Enforcement to address the situation and/or request the person leave the premises; or (2) directed to leave USF property by the University Official. In the event the person does not leave as requested by either University Law Enforcement or the University Official, University Law Enforcement may respond by providing an official warning and/or issuing an NTO.

## IV. GENERAL GUIDELINES

### A. Non-University Persons on USF Property

Non-University Persons are allowed access to University Facilities available to the public, during normal business hours and in accordance with USF protocol, guidelines or regulations governing the use of University Facilities. Non-University Persons are allowed to attend lectures, plays, and other activities on USF campus in the designated buildings or areas when such attendance is permitted by the sponsoring organization. Access to facilities may also be permitted to Non-University Persons in order to conduct official University business. Non-University Persons are not allowed on campus except as authorized by this Regulation. University Law Enforcement may request a person leave the property or may issue an NTO to any Non-University Persons at University Facilities for other than Authorized University Business or whose current conduct or reported conduct is deemed to present a threat to the orderly conduct of USF. University Officials have the authority to request those Non-University Persons to leave the University facility or premises. In the event the person does not leave as requested and/or if the University Official decides the matter should be reported to the University Law Enforcement, the University Official may notify University Law Enforcement who may respond to provide an official warning and/or issue an NTO.

### B. Classroom Attendance by Students ONLY

Only students registered for a class and those individuals contracted by USF as service providers for disability accommodation reasons may be in attendance in instructional areas unless permission of the instructor is given. The instructor, as the designated University Official responsible for the class, is authorized to notify non-students that they are trespassing and must leave the area of instruction. In the event the person does not leave as requested and/or if the University Official decides the matter should be reported to the University Law Enforcement, the University Official may notify University Law Enforcement who may respond to provide an official warning and/or issue an NTO. Non-University Persons are not allowed in classroom buildings unless present on Authorized University Business.

### C. Residence Halls

Residence halls are considered to be the home of students. No one is allowed in a residence hall except authorized USF personnel, resident students, individuals contracted by USF as service providers for disability accommodation reasons and resident students' guests according to published visitation policies.

**D. Library**

The University Official at each USF Campus vested with oversight of the Library, or his/her designee is authorized to warn those Non-University Persons, who are not using the library in an appropriate manner or who are creating an atmosphere not conducive to its use by University personnel, that they must leave the campus and/or an immediate report will be made to University Law Enforcement for appropriate action under this Regulation.

**E. Identification**

Identification may be requested of persons seeking access and/or use University Facilities.

**F.** All persons who have been notified by an authorized University Official to leave and remain out of specific area or areas, either verbally or by NTO, who are subsequently found in the specified area or areas are subject to arrest for trespass and/or loitering without further warning pursuant to law.

**G.** Nothing in the foregoing shall preclude or be interpreted to preclude or otherwise diminish the exercise of the statutory authority of University Law Enforcement to arrest in accordance with the laws of this state any person for violation of state law or applicable ordinances when such violations occur on any property or facilities which are under the jurisdiction of University Law Enforcement.

**V. <u>TRESPASS REVIEWS</u>**

**A. Students**

Students who receive an NTO may request or be provided a review of an NTO under the Student Conduct Code (SCC) by emailing the Office of Student Conduct and Ethical Development (studentconduct@usf.edu).

**B. University Persons**

University Person may request by emailing the University Police Department (usfpdpio@usf.edu):

1. An Initial Trespass Review within ten (10) academic days issuance of the NTO at the time the NTO was issued.

2. A General Trespass Review once every twelve (12) months from the last NTO review.

**C. Non-University Persons**

Non-University Persons may request by emailing the University Police Department (usfpdpio@usf.edu) a General Trespass Review after twelve (12) months from issuance of the NTO and an additional General Trespass Review request once every thirty-six (36) months from the last General Trespass Review.

**D. Trespass Review Committee**

An Initial or General Trespass Review will be a review by a committee appointed by the applicable office as described above and may include one (1) to three (3) as determined by that applicable office(r). Recommended members of the committee are representatives from the Offices of the University Law Enforcement, Student Conduct and Ethical Development (SCED), Academic Affairs, Human Resources, or Facilities and Planning. However, the makeup of the committee will be at the discretion of the applicable office(r). The Trespass Committee will review the submitted written request for review and the existing USF record unless the committee or office vested with the authority to conduct the Trespass Review initiates a request for additional materials.

The Committee shall make a recommendation within three (3) weeks of receipt of the written request for the Trespass Review to the Student Affairs or Facilities/Safety office. The Student Affairs or Facilities/Safety office shall notify the person of the final determination by either e-mail within a reasonable time from the date of the committee recommendation.

**HISTORY**

**Date Approved:** Mar. 17, 2011
**Substantively Amended:** (none)
**Technically Amended:** Jun. 26, 2024, Jan. 30, 2023, Mar. 9, 2021, Feb. 10, 2021, June 13, 2017, Nov. 22, 2016
**Biennial Review:** Jan. 31, 2025, Jan. 30, 2023
**Other:** Jul. 1, 2020 (Consolidation)

***Certification:*** *University of South Florida certifies that it has followed the Florida Board of Governors Regulation Development Procedure and has a record of written notices, comments, summaries, and responses as required.*